**Commonwealth v. Grimes**

*Anthony Ciuca*, for Commonwealth.
*Jeffrey Frankenburger*, for defendant.

LOVECCHIO, *J.*, June 5, 2014—

## OPINION AND ORDER

Defendant is charged with one count of DUI (incapable of safely driving), one count of DUI (highest rate) and three summaries. Defendant's non-jury trial was held on April 23, 2014 and June 2, 2014. Subsequently, the parties have submitted post trial written case authority and argument. The matter is now ripe for a cerdict.

Stuart Shebest first testified on behalf of the Commonwealth at the April 23, 2014 proceeding. He is the nursing home administrator for HCR Manor Care in Sunbury, PA. On June 29, 2013, he was the facility administrator at Williamsport Manor Care located at 300 Leader Drive in Williamsport.

He related that on June 29, 2013, he was working. At about 12:10 noon, staff mentioned to him that there was somebody lying on the parking lot. He went out to the parking lot with them and found defendant lying in the parking lot "obviously quite intoxicated, impaired." According to Mr. Shebest, defendant "smelled like alcohol, exhibited slurred speech and was obviously not able to stand."

Defendant spoke briefly with Mr. Shebest. He indicated to Mr. Shebest that he drove there. Upon request, defendant handed his keys over to Mr. Shebest.

Mr. Shebest asked defendant where his car was located and he pointed to a vehicle "that was parked pretty much

right behind him in the parking area," approximately four or five feet from where defendant was lying on the parking lot.

Mr. Shebest indicated that June 29 was a Saturday and "a slower day for visitors." He arrived for work at approximately 9:00 a.m. and left the facility for lunch between 11:45 a.m. and noon. He arrived "back at work at about 12:05 or 12:10 p.m." He did not see defendant's vehicle when leaving for lunch or returning. He "came across" defendant in the parking lot sometime around 12:15 to 12:20 p.m.

After speaking briefly with defendant, Mr. Shebest and a staff person assisted him into a wheelchair. They wheeled him over to a patio after which Mr. Shebest instructed one employee to call 911. Police officers and EMS personnel eventually arrived.

Justin Rosboschil next testified on behalf of the Commonwealth. He has been employed by the Pennsylvania State Police as a Trooper for "approximately a year and six months." He was on duty on June 29, 2013 and was dispatched to Manor Care due to a report of a drunken individual found in the parking lot.

According to Trooper Rosboschil, he was dispatched at approximately 12:45 and arrived on scene at approximately 12:50. He made contact with defendant, who was in a wheelchair under an awning-covered patio. He questioned defendant. Defendant noted that he drove there and admitted to drinking.

Defendant exhibited obvious signs of intoxication. It was difficult to get very long answers from defendant because of his slurred speech and slow response. He

exhibited a "blank stare" and smelled heavily of alcohol when he spoke.

When Trooper Rosboshcil asked defendant for his license, defendant pulled out his wallet and gave him a credit card. Defendant did not have his license with him. As a result, Trooper Rosboschil needed to identify defendant by running his name and date of birth.

Inside defendant's vehicle Trooper Rosboschil found an opened bottle of rum, as well as a very large black travel mug which had a "liquid in it, and was believed to be alcohol from the smell." The bottle of rum was found on the passenger side floor and the travel mug was found in the center console.

After looking inside defendant's vehicle, Trooper Rosboschil spoke with defendant again. Defendant admitted both that the alcohol in the vehicle was his and that he had drank "before he had driven." Defendant also admitted that he had been drinking while driving. He admitted consuming "about two quarts of alcohol."

Trooper Rosboschil administered standard field sobriety tests to defendant, including the walk and turn, and one legged stand test. Defendant "showed pretty much every indication of impairment that the tests are designed to show." During the one test "EMS or somebody actually had to help" Defendant stand up. On the one legged stand test after being directed to begin the test, defendant just stood there and "didn't lift any leg."

The results of the tests indicated that defendant was clearly under the influence of an alcoholic beverage. Trooper Rosboschil testified that he was of the opinion that defendant was under the influence of alcohol to the

extent he was not able to safely operate a vehicle. He did not, however, transport defendant to the Williamsport Hospital. Instead, EMS transported defendant because Trooper Rosboschil was concerned about the amount of alcohol in defendant's system.

Trooper Rosboschil followed the ambulance to the Williamsport Hospital. He read the implied consent warnings to defendant. Defendant signed a consent form and blood was drawn from defendant at 2:10 p.m. At the hospital, Trooper Rosboschil again questioned defendant. Defendant's responses at the hospital were somewhat better. Defendant admitted that he had been drinking prior to driving and that he traveled to Manor Care to visit his mother. Defendant also kept repeating that "he was wrong in doing what he did."

When the trial resumed on June 2, 2014, Trooper Rosboschil again testified. He explained that defendant did not leave in the ambulance until approximately an hour after he arrived. He indicated that during that time EMS personnel were evaluating and treating defendant, he spoke with Mr. Shebest, he spoke with EMS personnel and he was involved in identifying defendant, who unfortunately did not have proper identification on him.

Ayako Chan-Hosokawa testified as an expert witness on behalf of the Commonwealth. She is employed by NMS Labs in Willow Grove, PA as a forensic toxicologist and she has significant training and professional experience in that field. She testified in detail as to the procedure by which defendant's blood was tested and that the results of the testing showed that defendant's blood alcohol concentration level was .408 %.

The Commonwealth also admitted the following

exhibits into evidence in its case in chief: C-1 — Sketch of the parking lot where defendant was located; C-2 — Pennsylvania Department of Transportation Vehicle Record Abstract; C-3 — Penn Dot DL-26, Chemical Testing Warnings; C-4 — Susquehanna Health Whole Blood Alcohol Analysis Chain of Custody Form; C-5 — Curriculum Vitae of Ayako Chan-Hosokawa; C-6 — NMS Chain of Custody — Posting History Report; C-7 — NMS Chain of Custody — Sample History Report Work Order No.: 13164368; and C-8 — NMS Lab Toxicology Report issued July 5, 2013.

The Commonwealth rested its case, and defendant requested a demurrer with respect to the charge of driving under the influence with highest rate of alcohol, which the court denied. Defendant did not present any evidence.

Defendant argued that the evidence was insufficient to sustain a conviction on the DUI counts, in large part because the evidence was lacking with respect to defendant operating the vehicle and the time in which defendant may have operated the vehicle. The Commonwealth countered that the evidence was sufficient beyond a reasonable doubt to convict defendant of all of the charges and that any delay in obtaining defendant's blood for chemical testing beyond two hours was reasonable.

The court does not hesitate in concluding that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that defendant drove his vehicle to the Manor Care parking lot on June 29, 2013 for the purpose of visiting his mother. The evidence also established beyond a reasonable doubt that defendant drove his vehicle after drinking a sufficient amount of alcohol such that he was rendered incapable of safely driving. As

well, the evidence clearly showed that defendant appeared in a public place manifestly under the influence of alcohol to the degree that he endangered himself or annoyed other persons in his vicinity. Further, the evidence proved beyond a reasonable doubt that at the time he drove his vehicle he was not in possession of a valid driver's license. Finally, the evidence established beyond a reasonable doubt that while defendant was driving his vehicle, he consumed an alcoholic beverage.

Accordingly, the court does not hesitate in finding defendant guilty of counts 1, 3, 4 and 5.

With respect to count 2, driving under the influence with the highest rate of alcohol and as set forth previously in this opinion, the evidence established beyond a reasonable doubt that defendant drove his vehicle after and while drinking an alcoholic beverage.

In order to convict defendant of this charge, however, the Commonwealth must prove that the alcohol concentration in the defendant's blood was .16% or higher within two (2) hours after he had driven his vehicle.

The credible evidence establishes that defendant's vehicle arrived in the parking lot no earlier than shortly after 12:05 p.m. and no later than 12:10 p.m. The blood was taken at 2:10 p.m. Accordingly, there is a question whether defendant's blood was drawn within two (2) hours after he had driven.

Section 3802 (g) of the Vehicle Code, however, provides an exception to the two hour rule, which states:

Notwithstanding the provisions of subsection (a), (b), (c), (e), or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an

element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances: (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa. C.S. § 3802 (g).

The evidence establishes beyond a reasonable doubt that defendant did not imbibe any alcohol between the time he was arrested and the time the sample was obtained. The entire time from when law enforcement arrived until the blood was drawn, defendant was in the presence of either Trooper Rosboschil, EMS personnel and/or hospital personnel. The court does not accept defendant's argument that defendant could have secreted alcohol on his person and consumed it while in the ambulance or in the hospital.

The determinative issue is whether the Commonwealth has proven beyond a reasonable doubt good cause as to why the test sample could not be obtained within two hours.

In arguing that it established good cause beyond a reasonable doubt, the Commonwealth noted that Trooper Rosboshil performed his duties in as expeditious but reasonable manner as possible. He arrived on the scene within minutes of the dispatch. He took the appropriate steps in connection with the investigation which unfortunately caused him to expend more time than a

more routine investigation. More specifically, Trooper Rosboschil needed to speak with witnesses, needed to verify defendant's identification and needed to search the vehicle. He also needed to take defendant's severe intoxication into account while performing his duties, including interviewing defendant, administering field sobriety tests, taking defendant into custody and having defendant transported to the hospital by ambulance.

The evidence establishes that defendant was transported to the Williamsport Hospital in a prompt manner and Trooper Rosboschil took the necessary steps to secure a blood test as expeditiously as possible. Indeed, it appears that any delay in this matter was caused by defendant's severe intoxication. The investigation was delayed because defendant could not produce identification. The interview was delayed because defendant could not initially speak coherently or in complete sentences. The transport was delayed because EMS needed to assess defendant and needed to transport the defendant per Pennsylvania State Police policy. As well, processing at the hospital appeared to be somewhat delayed by virtue of the fact that Trooper Rosboschil needed to review the implied consent warnings and documents with an extremely intoxicated defendant.

The court will not provide a benefit to defendant because of his extreme intoxication. Because Trooper Rosboschil acted as expeditiously as possible, in good faith and with defendant's health and safety being paramount, the court finds that the Commonwealth has established beyond a reasonable doubt "good cause" why the chemical test sample could not be obtained within two hours. The court also notes that the violation of the two hour rule was de minimis at best. The blood was taken at the most within a few minutes after two hours.

Accordingly, the court finds that the Commonwealth has presented sufficient evidence to conclude beyond a reasonable doubt that defendant drove a vehicle and that his blood alcohol content was significantly above a .16%, namely .408%. Furthermore, the Commonwealth has shown good cause explaining why the chemical test could not be obtained within two hours and that defendant did not imbibe any alcohol between the time he was arrested and by the time the sample was obtained. Therefore, the court also finds defendant guilty of count 2, driving under the influence of alcohol with the highest rate of alcohol.

## ORDER

And now, this 5th day of June 2014, following a non-jury trial, the court finds the defendant guilty of count 1, driving under the influence of alcohol (incapable of safely driving), an ungraded misdemeanor; count 2, driving under the influence with the highest rate of alcohol, an ungraded misdemeanor; count 3, public drunkenness, a summary offense; count 4, carrying/exhibiting driver's license on demand, a traffic summary and count 5, restriction on alcoholic beverages, a traffic summary.

Sentencing is scheduled for August 19, 2014 at 9:00 a.m. in Courtroom No. 4 of the Lycoming County Courthouse.

Defendant is directed to contact West Branch Drug and Alcohol Abuse Commission for the purposes of conducting a CRN and Assessment. A copy of this opinion and order shall be provided to West Branch Drug and alcohol abuse commission in order that they may arrange to have a representative contact defendant at his place of incarceration, either the Lycoming County Prison or the Tioga County Prison to conduct such an assessment and evaluation.

Furthermore, the Lycoming County Adult Probation Office shall prepare a Presentence Report.

## ORDER

And now, this 5th day of June 2014, defendant having been convicted of DUI and related offenses and defendant's sentencing being scheduled for August 19, 2014 at 9:00 a.m. in Courtroom No. 4 of the Lycoming County Courthouse, the Sheriff of Lycoming County is directed to proceed to the Tioga County Correctional Facility to transport defendant to the Lycoming County Courthouse on the date of his sentencing in order that he may be sentenced. Following sentencing, the Sheriff is directed to return defendant to the Tioga County Prison.